## INTRODUCTION

I, Michael A. Palmer, a Special Agent, with the Federal Bureau of Investigation (hereinafter referred to as FBI), being duly sworn, depose and state the following:

1. I am a Special Agent (SA) of the FBI and have been so employed for approximately seven years. I am currently assigned to the FBI San Juan Division, and I am assigned to the Caribbean Corridor Strike Force (hereafter CCSF). CCSF is a multi-agency investigative initiative designed to combat the trafficking of narcotics and other controlled substances. I am authorized, and presently assigned, to investigate violent crime and other violations of federal law, to include violations of Title 18 and Title 21, of the United States Code. I graduated from the FBI Academy at Quantico, Virginia, and I have received specialized training in areas including violent crime, crimes against children, controlled substance offenses, and financial crimes. I have acquired knowledge and information about crime from numerous sources, including: formal and informal training, other law enforcement officers and investigators, informants, persons whom I have interviewed, and my participation in numerous other investigations.

2. I have participated in narcotics investigations in various roles. I have debriefed defendants, witnesses, and informants who had personal knowledge of major narcotics trafficking organizations. Additionally, I have participated in many aspects of narcotics investigations including conducting physical surveillance, writing and executing search warrants, and conducting arrests.

3. Based on my training and experience, and information from other experienced investigators, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics, and the collection of money proceeds from narcotics trafficking.

4. I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of vague and coded language, debit calling cards, public telephones, cellular telephone technology, counter surveillance, false or fictitious identities, disposing of contraband into the ocean during maritime missions, and encoded communications.

5. I have received instruction and training and have participated in investigations involving drug trafficking organizations and the laundering of drug proceeds. I have used a variety of investigative techniques, including: interviews of informants and cooperating witnesses; physical surveillance; controlled drug purchases; consensual monitoring and recording of telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; and search and arrest warrants that have led to seizures of narcotics, firearms, and other contraband.

6. I have participated in numerous arrests of suspects charged with drug and/or violent offenses.

7. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior agents, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

8. I have not set forth all the facts uncovered during this investigation in preparing this affidavit. This affidavit is intended to show merely that there is sufficient probable cause in support of a criminal complaint concerning federal felony offenses enumerated in Title 46, United

States Code, Sections 70502, 70503, 70506 (that is, conspiracy to possess with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States).

## FACTS ESTABLISHING PROBABLE CAUSE

Based on my personal participation in this investigation, and discussions with other law enforcement officers and reviews of reports generated by local and federal law enforcement officials, I learned the following:

1. While on a routine patrol on or about November 18, 2019, a Joint Interagency Task Force South Marine Patrol Aircraft (MPA) detected a 45-foot fishing vessel as a target of interest transiting north at 7 knots, located approximately 115 nautical miles south of Mona Island, Puerto Rico. The U.S. Coast Guard Cutter (CGC) Mohawk diverted to intercept the fishing vessel. CGC Mohawk arrived on scene, launched Cutter Boat-Large, and conducted a "right of approach" on the fishing vessel, Kaluchi, which contained an eight-man crew. The Kaluchi flew a Venezuelan flag, and had Venezuelan homeport and registration numbers.

2. Upon detecting the Coast Guard Boat, the MPA observed Kaluchi change course to the South and jettison multiple packages; the jettisons were captured on video. CGC Mohawk searched the jettison position and recovered one empty black bag and several empty plastic bags. The Kaluchi ultimately became compliant. CGC Mohawk invoked the Article 17 process to confirm registry and receive permission from the flag state to stop, board and search. The recognized government of Venezuela authorized the boarding of the vessel under presumptive flag state authority. CGC Mohawk commenced boarding and reported one hundred percent at-sea space accountability.

3. CGC Mohawk reviewed the MPA video and determined that the Kaluchi was in fact the vessel captured jettisoning packages in the video. Based on this evidence, the CGC

Mohawk used an IONSCAN machine (which uses ion mobility spectrometry to detect the presence of trace amounts of illegal substances including controlled substances like cocaine) to conduct swipes on the crew. The swipes resulted in positive hits for amphetamine on four of the crew members. CGC Mohawk subsequently encountered problems with their IONSCAN equipment.

4. Another vessel, the U.S.S. Detroit, subsequently arrived on scene. The U.S.S. Detroit's boarding team conducted additional IONSCAN swipes of the vessel and crew resulting in positive hits for cocaine and Tetrahydrocannabinol (THC).

5. On board the Kaluchi were the following individuals:

   a) Antonio Nicholas Vasquez-Vasquez (Master), DOB: 02/21/1983, Nationality: Venezuelan;

   b) Santiago Jose Marcano-Hernandez, DOB: 07/25/1962, Nationality: Venezuelan;

   c) Pedro Ramon Salazar, DOB: 06/21/1962, Nationality: Venezuelan;

   d) Jesus Antonio Marin-Zabala, DOB: 10/28/1968, Nationality: Venezuelan;

   e) Cruz Augusto Vasquez-Vasquez, DOB: 06/07/1978, Nationality: Venezuelan;

   f) Terry Miguel Salazar-Spin, DOB: 04/26/1995, Nationality: Venezuelan;

   g) Simon Jose Velasquez-Vasquez, DOB: 05/16/1982, Nationality: Venezuelan;

   h) Wilfredo Manuel Manrique-Silva, DOB: 02/07/1984, Nationality: Venezuelan

6. On November 26, 2019, the above-listed defendants were interviewed regarding their activities on the Kaluchi. One of these individuals stated to investigators that the crew on the Kaluchi departed Margarita, Venezuela en route to the territorial waters of the Dominican Republic carrying an unknown quantity of cocaine. Once inside the territorial waters of the Dominican Republic, the Kaluchi planned to meet another vessel and transfer the cocaine to another vessel. After the transfer the Kaluchi and crew would return to Venezuela, where they would each be paid

approximately $1,500 USD. According to this individual, this trip was intended to be identical to one that was taken by one or more members of this same crew approximately two months ago.

## CONCLUSION

Based upon my training, experience, and my participation in this investigation, I respectfully believe that sufficient probable cause exists to show that there is present material evidence of a commission of a violation of a Federal Law to wit:

Title 46, United States Code, Section 70502(c)(1), 70503(a)(1), and 70506(a) & (b), conspiracy to possess with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States.

_____
Michael A Palmer
Special Agent
Federal Bureau of Investigation


Sworn to before me this 26th day of November of 2019.

_____
BRUCE J. MCGIVERIN
UNITED STATES MAGISTRATE JUDGE